UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEON SMITH,

                                          Plaintiff,

                                                                                       9:10-CV-1247
v.                                                                                        (NAM/TWD)

TAMARA CAREY, et al.,

                                          Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

LEON SMITH
Plaintiff *pro se*
P.O. Box 462
Clark Mills, New York 13321

HON. ERIC T. SCHNEIDERMAN               MICHAEL G. MCCARTIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Leon Smith claims that Defendants violated his right to privacy, used excessive force in unlawfully locking him in a seclusion room, and were deliberately indifferent to his serious medical needs. (Dkt. No. 1.) Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 50.) Plaintiff has

not opposed the motion, despite being warned of the potential consequences of failing to respond. (Dkt. No. 50-1.) For the reasons discussed below, I recommend that Defendants' motion be granted.

I.  **FACTUAL AND PROCEDURAL SUMMARY**

This lawsuit arises from an incident that occurred at the Central New York Psychiatric Center ("CNYPC") on November 9, 2009. (Dkt. No. 50-3 at 8:11-14.[1]) Plaintiff, a resident of the facility, was in his room, clad in his underwear, doing legal work. *Id*. at 8:17-9:8. Defendant TA Diane Gianinni came into Plaintiff's room without knocking to tell him that it was time for programs. *Id*. at 8:21, 10:15-17. Plaintiff got "very emotional" because he had told her "a long time ago, don't ever come into my room without knocking . . . ." *Id*. at 10:17-19. Plaintiff testified at his deposition that he was very upset because he was concerned that someone would accuse him of sexual misconduct. *Id*. at 11:3-9. Plaintiff admits that he yelled at Defendant Gianinni not to come into his room ever again and that he was going to write her up. *Id*. at 11:13-19. Defendant Gianinni declares that Plaintiff yelled "fuck you, fuck you bitch, you can't fuckin make me go to the dayroom or the side room, I can stay in my own fucking room if I want to." (Dkt. No. 50-5 ¶ 3.)

When Defendant Gianinni left the room, Plaintiff threw his clothes on and went to the day room. (Dkt. No. 50-3 at 11:1-3.) There he spoke to Defendant Leslie Key, who told Plaintiff that he could "take a break in the side room for a couple of hours." *Id*. at 12:12-13. The side room is a quiet room with a hard plastic chair and window, designed for use by one person at a

---

[1] Citations to page numbers in Plaintiff's deposition refer to the page numbers in the original document.

time. *Id*. at 12:17-13:6. Plaintiff entered the room voluntarily at 1:30 and remained there for an hour or so. *Id*. at 13:18-25. He did not plan to come out until the next shift started at 3:00. *Id*. at 14:3-7.

The door from the side room to the day room was open. *Id*. at 17:22-8:1. From that vantage point, Plaintiff observed Defendant Gianinni arguing with another resident about washing clothes. *Id*. at 15:18-21. Defendant Nurses Charmaine Bill and Miya Burt came out of the nurses' office in response to the arguing. *Id*. at 16:4-7. Defendant Chris Fullem also arrived on the scene. *Id*. at 16:9-24. Plaintiff told Defendants Bill, Burt, and Fullem to get Defendant Gianinni out of the day room and make her stop harassing the other resident. *Id*. at 16:7-8. Defendant Gianinni declares that Plaintiff yelled "[t]hat fucking cunt, I'm gonna get her off this ward that fucking bitch cunt, white trash." (Dkt. No. 50-5 ¶ 4.) Plaintiff admitted at his deposition that he yelled at Defendants Bill, Burt, and Fullem but testified that he did not yell any obscenities. (Dkt. No. 50-3 at 29:21-30:1.)

Defendant Burt ordered the others to close the door to the side room on Plaintiff. *Id*. at 18:4-5. Plaintiff said that he would not allow the door to be closed. *Id*. at 18:5-6. It was Plaintiff's understanding that the door could only be closed on the orders of a doctor. *Id*. at 19:9-13. Plaintiff put his hand on the door and tried to hold it open. *Id*. at 31:4-8. Defendant Brandon Liggins pushed Plaintiff to get him out of the doorway. *Id*. at 31:12-32:19. The push did not move Plaintiff very far. *Id*. at 33:14-16. Plaintiff was moved about a foot and did not hit the floor. *Id*. at 33:17-34:1.

After Defendant Liggins pushed Plaintiff, Plaintiff kept one leg and one hand in the doorway to prevent the door from being closed. *Id*. at 32:22-25. At that point, Defendants Key,

3

Liggins, Fullem, and Burt tried to close the door. *Id*. at 38:23-39:3. The struggle over the door lasted on and off for fifteen or twenty minutes. *Id*. at 43:19-24. Defendant Fullem got angry because Plaintiff would not close the door. *Id*. at 42:14-15. Defendant Fullem kicked the door hard. *Id*. at 42:15-16. Plaintiff's right hand got caught in the door when Defendant Fullem kicked the door. *Id*. at 42:17-19, 43:7-9.

After Plaintiff's hand got caught in the door, he let go of the door and retreated into the side room. *Id*. at 42:22-23. Defendants locked the door. *Id*. at 42:23-24. Plaintiff asked to see a nurse because his hand hurt. *Id*. at 42:24-25. Defendants denied the request because he "tried to attack the TAs." *Id*. at 42:25-43:2.

Defendant Psychiatrist Elizabeth Farnum declares that Defendant Burt contacted her at 2:10 p.m. regarding Plaintiff's behavior. (Dkt. No. 50-8 ¶ 5.) Defendant Farnum arrived on the scene at 2:15 p.m. and explained to Plaintiff that he would be released from seclusion when he displayed a calm and relaxed manner and demeanor, verbalized no further feelings to harm others, and was free of verbal threats or harmful physical gestures. *Id*. She personally authorized that Plaintiff be kept in the side room because of his threatening behavior toward staff. *Id*. ¶ 4.

When the shift changed at 3:00, Plaintiff screamed at non-defendant TA Bolton that he was in pain. (Dkt. No. 50-3 at 51:17-22.) Plaintiff testified at his deposition that TA Bolton was the only person he used obscenities with. *Id*. at 63:14-23. He showed her his hand and told her that "they" would not let him have any ice for it. *Id*. at 51:24-52:1. TA Bolton asked Defendant Nurse Stacy Crockett to bring Plaintiff some ice. *Id*. at 52:6-7, 69:1-70:7. Defendant Crockett looked at Plaintiff's hand and said she would not give him ice because he tried to attack a TA. *Id*. at 52:9-14.

4

At 5:00, Defendant Doctor Nelson took Plaintiff into the nurse's station, looked at Plaintiff's hand, and gave him some ice. *Id*. at 52:25-54:9. In her report of this examination, Defendant Nelson stated that Plaintiff's hand was swollen, that Plaintiff accepted 600 milligrams of Motrin, and that he was grumpy. *Id*. at 57:24-58:3. After he was treated, Plaintiff was put back in the side room. *Id*. at 65:22-25.

Plaintiff testified at his deposition that he remained in the side room until 11:00 that night. *Id*. at 43:10-12. Defendant Michael Jardieu declares that, contrary to Plaintiff's assertion, Plaintiff was released from the side room at 5:10 p.m. and permitted to return to his regular room. (Dkt. No. 50-13 ¶ 3.) Defendant Jardieu was stationed outside the side room. *Id*. An observation form that he completed shows that at 5:10 p.m. Plaintiff was in the side room, quiet and calm, and that he refused the dinner that was offered to him. (Dkt. No. 50-14.) At 5:30 the form states that Plaintiff was "in room writing at desk." *Id*. Defendant Jardieu declares that it "is important to note that there is no desk in the seclusion room . . . Thus, the entry showing that plaintiff was 'writing at his desk' means, without doubt, that plaintiff was in his regular CNYPC room and was no longer in the seclusion room" (Dkt. No. 50-13 ¶ 4.) Defendant Farnum declares that Plaintiff was kept in the room until 5:10 p.m. because she received reports that Plaintiff continued to yell at staff and wave his arms. (Dkt. No. 50-8 ¶ 6.) She further declares that she personally authorized the entire period of seclusion. *Id*. ¶ 4.

Plaintiff's hand was x-rayed after the incident. (Dkt. No. 50-3 at 54:21-25.) Other than being swollen for a couple of days, there was no injury to his hand. *Id*. at 93:2-94:4, 101:6-102:24. At the time of his deposition, two years after the incident, he could no longer remember which hand was caught in the door. *Id*. at 94:3-4.

5

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

When a plaintiff fails to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are undisputed in the record; and (2) assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the defendants. *See Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001); L.R. 7.1(b)(3).

Where a plaintiff has failed to properly respond to a defendant's Statement of Material

---

[2] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

Facts (its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment. *See* L.R. 7.1(a)(3); *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *Champion*, 76 F.3d at 486.

### B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means

that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III. ANALYSIS

#### A. Privacy Claim

Plaintiff testified at his deposition that he sued Defendant Giannini because she came into his room without knocking when he was in his boxers. (Dkt. No. 50-3 at 81:3-13.) Construed broadly, Plaintiff appears to be asserting that Defendant Giannini violated his right to privacy. Defendants move for summary judgment, arguing that Plaintiff's allegations against Defendant

8

Giannini "simply fail to state a constitutional claim." (Dkt. No. 50-15 at 15.[3]) Defendants are correct.

At least one court in this Circuit has held that, due to the security concerns that locked psychiatric facilities share with prisons and jails, involuntarily committed individuals do not have a right to privacy in their rooms and thus cannot assert Fourth Amendment claims regarding intrusions by facility staff. *Lombardo v. Holanchock*, No. 07 Civ. 8674, 2008 U.S. Dist. LEXIS 48753, at *21-24, 2008 WL 2543573, at *7-8 (S.D.N.Y. June 25, 2008).[4] I find the reasoning of *Lombardo* persuasive and agree with its holding. Therefore, I recommend that the Court dismiss Plaintiff's claim against Defendant Gianinni.

**B.     Excessive Force Claims**

Construing the complaint and Plaintiff's deposition testimony broadly, Plaintiff alleges that Defendants Bill, Fullem, Key, Liggins, and Burt violated his constitutional rights by using excessive force when they shut him into the side room. Defendants move for summary judgment of these claims, arguing that the undisputed facts show that no defendant used excessive force. (Dkt. No. 50-15 at 8-9.) Defendants are correct.

As Judge McCurn observed in the case relied upon by Defendants:

> In an excessive force claim brought by an involuntarily civilly committed individual, the appropriate standard is substantive due process under the Fourteenth Amendment, and not objective

---

[3]     Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

[4]     The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

> reasonableness under the Fourth Amendment. Individuals in the non-seizure, non-prisoner environment have a substantive due process right to be free from the use of excessive force by their custodians. In evaluating an excessive force claim, factors to be considered include the need for the application of force, the relationship between the need and amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. If the force was maliciously or sadistically employed for the very purpose of causing harm in the absence of any legitimate government objective and it results in substantial emotional suffering or physical injury, the conduct is presumptively unconstitutional. Malicious and sadistic abuses of government power that are intended only to oppress or to cause injury, and serve no legitimate purpose unquestionably shock the conscience. Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.

*Balkum v. Sawyer*, No. 6:06-CV-1467, 2011 U.S. Dist. LEXIS 122467, at *32-33, 2011 WL 5041206, at *11-12 (N.D.N.Y. Oct. 21, 2011) (citations and punctuation omitted).[5]

Here, the evidence shows that Defendants used an appropriate amount of force to confine Plaintiff to the side room after he began yelling at staff. The only contact between Plaintiff and any of the Defendants occurred when Defendant Liggins pushed Plaintiff and, arguably, when Defendant Fullem kicked the door while Plaintiff's hand was on it. Plaintiff did not fall as a result of the push and suffered no injury other than swelling from the kick. There is no evidence that any Defendant used any more force than was necessary to close the door or that any Defendant continued to use force after the door was closed. On this record, a reasonable jury could not find that Defendants, without a legitimate government objective, used force maliciously and sadistically for the very purpose of causing harm. Therefore, I recommend that

---

[5] Defendants served a copy of this unpublished decision on Plaintiff with their moving papers. (Dkt. No. 50-16 at 1-13.)

the Court grant Defendants' motion for summary judgment of Plaintiff's excessive force claims.

### C. Confinement Claims

Construing the complaint and Plaintiff's deposition testimony broadly, Plaintiff alleges that Defendants Bill, Carey, Farnum, Fullem, Key, Liggins, and Burt wrongfully confined him in the side room. Defendants move for summary judgment of this claim, arguing that they did not violate Plaintiff's constitutional rights. (Dkt. No. 50-15 at 6-7.) Defendants are correct.

In support of their argument, Defendants rely again upon Judge McCurn's decision in *Balkum v. Sawyer*. There, Judge McCurn observed that the complaint of a civilly committed person regarding further restraint is properly analyzed under the Fourteenth Amendment. *Balkum*, 2011 WL 5041206, at *9. Under that standard:

> A state has the unquestioned duty to provide reasonable safety for all those confined within the state's mental health institutions. The state may not restrain residents except when and to the extent professional judgment deems this necessary to assure such safety. A decision made by a professional is presumptively valid, and liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.

*Id*. (citations and punctuation omitted).

Here, Defendant Farnum, a licensed psychiatrist, declares that:

> I authorized the three-hour seclusion of the plaintiff on November 9, 2009 because I believed, using my best medical judgment, that it was necessary to protect CNYPC staff and other patients from plaintiff's threatening behavior, as it was reported to me by other staff, and as it was personally observed by me. Plaintiff had the ability to control the amount of time that he would stay in seclusion, since all he had to do was display a calm, non-threatening demeanor, as he ultimately did by 5:10 p.m. that day, when he was released from seclusion.

(Dkt. No. 50-8 ¶ 9.) There is nothing on the record before this Court indicating that Defendants

substantially departed from accepted professional judgment, practice, or standards in confining Plaintiff to the side room. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's claims regarding his confinement to the side room.

### D. Medical Care Claims

Construing the complaint and Plaintiff's deposition testimony broadly, Plaintiff alleges that Defendants Crockett and Nelson violated his constitutional rights by denying him adequate medical care. Defendants move for summary judgment of this claims, arguing that Plaintiff did not suffer from a serious medical need and that Defendants were not deliberately indifferent to his condition. (Dkt. No. 50-15 at 10-13.) Defendants are correct.

Because Plaintiff was civilly committed at the time of the incident, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Groves v. New York*, No. 9:09-CV-0412, 2010 U.S. Dist. LEXIS 29722, at *22, 2010 WL 1257858, at *6 (N.D.N.Y. Mar. 1, 2010).[6] Despite this distinction, the same standard applies to Fourteenth Amendment medical claims involving non-prisoners as to Eighth Amendment medical claims regarding prisoners. *See Caiozzo v. Koreman*, 581 F.3d 63, 66 (2d Cir. 2009) (applying standard from Eighth Amendment jurisprudence to pretrial detainee's due process claims regarding medical care). There are two elements to a claim that officials violated a plaintiff's right to receive adequate medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Id*. at 72 (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the

---

[6] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698*,* 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Id*. at 702-03.

Here, Plaintiff did not suffer from a serious medical condition. The undisputed evidence shows that there was no lasting injury to Plaintiff's hand and that it was merely swollen for a few days. (Dkt. No. 50-3 at 93:2-94:4, 101:6-102:24.) More serious hand injuries have been found to be insufficiently serious to satisfy the objective prong of a constitutional medical claim. *Banks v. Stewart*, No. 08 Civ. 7463, 2011 U.S. Dist. LEXIS 67457, at *38-39, 2010 WL 2697075, at *15 (S.D.N.Y. Jul. 6, 2010) (collecting cases).[7] Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's medical claims.

---

[7] Lexis and Westlaw, which employ different formats for the dates of Report-Recommendations that are later adopted by district court judges, list different dates for this decision. I have used the date listed by Westlaw because that is the version that Defendants provided to Plaintiff. Defendants served a copy of this unpublished decision on Plaintiff with their moving papers. (Dkt. No. 50-16 at 14-28.)

Even if Plaintiff had suffered from a sufficiently serious medical condition, the evidence does not raise a triable issue of fact that Defendants were deliberately indifferent to that condition. Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Id*. at 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, a plaintiff must prove that (1) a medical care provider was aware of facts from which the inference could be drawn that the plaintiff had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The plaintiff then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997).

Here, the undisputed facts show that Defendant Nelson provided Plaintiff with adequate medical care. Defendant Nelson examined Plaintiff's hand, provided him with ice, and gave Plaintiff a pain killer. (Dkt. No. 50-3 at 52:25-54:9, 57:24-58:3.) Plaintiff's hand was x-rayed after the incident and he suffered from no injury other than swelling. *Id*. at 54:21-25, 93:2-94:4, 101:6-102:24. Therefore, even if Plaintiff's hand injury was sufficiently serious to satisfy the objective prong, I would recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's medical care claim against Defendant Nelson.

Any delay in treatment attributable to Defendant Crockett does not rise to a constitutional level. "When the basis for a prisoner's Eighth Amendment claim is a temporary delay . . . in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical*

14

*condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original). The delay of two hours between the time that Defendant Crockett refused to give Plaintiff ice and the time that Defendant Nelson treated Plaintiff was negligible. Therefore, even if Plaintiff's hand injury was sufficiently serious to satisfy the objective prong, I would recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's medical care claim against Defendant Crockett.

### E. Claims Regarding Incident Reports

Construing the complaint and Plaintiff's deposition testimony broadly, Plaintiff alleges that Defendants Jardieu, Delmedico, and Farnum violated his rights by writing false reports about the November 9, 2009 incident. Defendants move for summary judgment of the claim against Defendant Jardieu, arguing that it fails to state a constitutional claim. (Dkt. No. 50-15 at 15.) Defendants are correct. Although Defendants have not addressed the claims against Defendants Delmedico and Farnum, they are subject to dismissal for the same reasons.

A prisoner's claim that a correctional officer filed a false misbehavior report may implicate two separate constitutional provisions: (a) the Fourteenth Amendment right to procedural due process; or (b) the right not to be retaliated against for exercising First Amendment rights such as the right of access to the courts or the right to petition the government for redress of grievances. *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986); *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988); *Jones v. Coughlin*, 45 F.3d 677 (2d Cir. 1995).

In the procedural due process context, the Second Circuit has held that while a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct

15

which may result in the deprivation of a protected liberty interest," he *does* have "the right not to be deprived of a protected liberty interest without due process of law." *Freeman*, 808 F.2d at 951. Where a prisoner is falsely accused of violating disciplinary rules, and a hearing is held on the allegedly false charges that comports with the procedural due process standards set forth by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and any resulting guilty finding is based on "some evidence," the correctional officer's filing of unfounded charges does not give rise to procedural due process liability. *Freeman*, 808 F.2d at 953-54.

Here, Plaintiff was not deprived of any recognized liberty interest. Plaintiff alleges that he was confined in the side room for a period of nine hours. (Dkt. No. 50-3 at 43:10-12.) Substantially longer periods of confinement have been consistently held not to implicate liberty interests. For example, where a prisoner has served less than 101 days in segregation, the confinement constitutes a deprivation of a liberty interest only if "the conditions were more severe than the normal SHU conditions."[8] *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004). Thus, Plaintiff has no cognizable due process claim arising from this incident.

In the retaliation context, "[a]n allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right ... states a claim under § 1983. A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff. The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even

---

[8] "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea*, 313 F.3d 677, 681 (2d Cir. 2002)(citations omitted). Here, Plaintiff does not allege that he was confined to the side room in retaliation for any constitutionally protected conduct. Thus, Plaintiff has no cognizable retaliation claim arising from this incident. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss these claims.

### F. Personal Involvement

Plaintiff has named several Defendants because they had supervisory authority over the Defendants who were actively involved in the November 9, 2009, incident. Plaintiff testified at his deposition that he sued Defendant Nurse Doreine Gray because it was her job to train the TAs and she failed to train them to communicate with residents in a respectful way or to knock before entering residents' rooms. (Dkt. No. 50-3 at 81:16-82:6.) Plaintiff testified at his deposition that he sued Defendant Michael Hogan because he failed to respond to Plaintiff's letters about the November 2009 incident and other incidents. *Id*. at 83:8-85:19. Plaintiff testified at his deposition that he sued Defendant Terri Maxymillian because she is the head of the treatment program at CNYPC and is responsible for everyone in the building. *Id*. at 90:19-91:7. Plaintiff testified at his deposition that he sued Defendant Jeff Nowicki because he is one of the bosses and because Plaintiff informed him before November 2009 of his ongoing problems with Defendant Gianinni. *Id*. at 95:17-96:20. Plaintiff testified at his deposition that he sued Defendant Keshia Olugobi because she was his counselor and did not do anything about his ongoing problems with Defendant Gianinni. *Id*. at 98:6-100:16. Plaintiff testified at his

deposition that he sued Defendant Donald Sawyer because he failed to respond to Plaintiff's letters of complaint. *Id*. at 100:17-101:5.

Defendants move for summary judgment of these claims, arguing that Plaintiff has failed to adequately allege or prove that these Defendants were personally involved in any constitutional violation. (Dkt. No. 50-15 at 13-16.) Defendants are correct.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered personally involved if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the

rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[9]

Here, the undisputed evidence before the Court shows that Defendants Hogan, Maxymillian, Nowicki, Olugobi, and Sawyer had no personal involvement in the events of November 9, 2009. I note in particular that a plaintiff's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000). *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss these claims.

**ACCORDINGLY**, it is

**ORDERED** that the Clerk provide Plaintiff with copies of *Lombardo v. Holanchock*, No. 07 Civ. 8674, 2008 U.S. Dist. LEXIS 48753, 2008 WL 2543573 (S.D.N.Y. June 25, 2008) and *Groves v. New York*, No. 9:09-CV-0412, 2010 U.S. Dist. LEXIS 29722, 2010 WL 1257858 (N.D.N.Y. Mar. 1, 2010) in accordance with the Second Circuit's decision in *LeBron v.*

---

[9] In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this motion that *Colon* remains good law.

*Sanders*, 557 F.3d 76 (2d Cir. 2009).

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 15) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: December 28, 2012
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge